IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| THE ESTATE OF § | | |
| WILBERT LEE HENSON, § | | |
| BARBARA KAY HENSON REED, § | | |
| IWILLER G. HENSON HENDRIX, § | | |
| WILMA LYNN HENSON, and § | | |
| SHELISHA RICHARDSON, § | | |
| Plaintiffs, § | | |
| § | | |
| vs. § | CIVIL ACTION NO. | |
| § | | |
| § | 7:06-CV- 044-O-AH | |
| WICHITA COUNTY, TEXAS, § | | |
| SHERIFF THOMAS J. CALLAHAN § | ECF | |
| in his Official and Individual Capacity, § | | |
| DR. DANIEL H. BOLIN, M.D., § | | |
| KAYE KRAJCA, ROSE INGRAM, § | | |
| MICHELLE GEORGE, JEFF BAKER, § | | |
| WILLIAM OSEI, MICHAEL GRAVES, § | | |
| JONATHON PARKER, § | | |
| SCOTT SWALWELL, § | | |
| SOMCHAI MONTHAR, § | | |
| OFFICER SHEPHERD, and § | | |
| UNIDENTIFIED DETENTION § | | |
| OFFICERS # 1, 2, 3, 4, and 5, § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Daniel Bolin's Motion to Dismiss Based on Qualified Immunity (filed September 10, 2007) (Doc. No. 66). After careful consideration of all parties' submissions and the law applicable to the issues before the Court, the Court **GRANTS** this Motion.

### I. BACKGROUND

Plaintiffs Barbara Kay Henson Reed, individually and as personal representative of the Estate of Wilbert Lee Henson, deceased, Iwiller G. Henson Hendrix, Wilma Lynn Henson, and

Shelisha Richardson filed this suit against, Daniel H. Bolin (Dr. Bolin), contract physician for Wichita County Jail, among other defendants associated with the jail. Plaintiffs seek to hold Dr. Bolin liable for damages under 42 U.S.C. § 1983 claiming that Wilbert Lee Henson's Fourteenth Amendment due process rights were violated when he was denied medical care while in custody of the Wichita County Jail.[1] Plaintiffs also allege claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Texas Wrongful Death Act, Texas Survival Act, and they assert Texas common-law negligence and breach of contract claims.

In analyzing a 12(b)(6) Motion to Dismiss, the Court must accept Plaintiffs pleaded facts as true. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). Therefore, the Court now recounts Plaintiffs facts as follows:

Henson was arrested on November 23, 2004, on a bond forfeiture warrant for driving with a suspended license and was taken to Wichita County Jail. At this time, Dr. Bolin served as the contracting physician and supervisor of the nursing staff of the Wichita County Jail. Michelle George, Rose Ingram, and Kaye Krajca served as the jail nursing staff. During the booking process, Henson alerted Nurse George and other unidentified detention officers that he was having difficulty breathing, that he suffered with a chronic respiratory condition of emphysema, and was recently diagnosed with pneumonia. He also informed them that his conditions had already warranted two hospital visits within the month, and he requested medical attention at that time. Nurse George

---

[1] Although Plaintiffs have brought this action pursuant to both Fourth and Fourteenth Amendment violations, Plaintiffs have asserted no facts to support a Fourth Amendment violation. Therefore, the Court declines to address it.

2

administered Keflex and an Albuterol inhaler. She submitted an Inmate Request for Medical Attention form, (WSCO Form 111, "Pink Card,") requesting evaluation and treatment by a physician. She also included instructions that another pink card should be submitted when Henson arrived at the Wichita County Jail Annex.

On November 23, 2004, at approximately 8:00 P.M., Henson was transported from the County's main jail to the Annex. Upon arrival, Henson again requested medical attention for his worsening respiratory condition. An additional pink card was submitted. During the subsequent four days, Henson began to exhibit a continuous cough and shortness of breath, severely limiting his speech. Henson utilized the emergency call button from his cell to summon assistance from the detention officers. Allegedly, as a result, some of the detention officers threatened Henson with solitary confinement if he did not cease his use of the emergency call button. Henson's fellow inmates utilized the emergency call button on his behalf. Henson was then disciplined by at least one unidentified detention officer, and he was taken to solitary confinement.

After being placed in a solitary cell, Nurse Krajca ordered detention officers to observe Henson every thirty (30) minutes noting any changes in condition and to administer nebulized updraft treatments of Albuterol Sulfate every four hours, if needed. Thereafter, officers allegedly monitored Henson through a slot in the cell door. Approximately fifteen minutes after Henson was placed in solitary, his blood pressure and pulse were assessed by Officer Shepherd which showed a reading of 208/107 and a heart rate of 92. Henson received a total of three breathing treatments between 2:15 a.m. and 4:00 p.m. on November 28, 2004, and another treatment at 3:25 a.m. the following day.

At 5:04 a.m., Officers Monthai, Parker, Graves, Baker, and Swalwell responded to Henson's cell to find him in severe respiratory distress. He was unable to walk or stand due to his severely deteriorated medical condition and shortness of breath. Henson stated to the Defendants, "I'm not going to make it" (Exhibit C). As there was no nurse on duty, Nurse Ingram was called, and she ordered that Henson be placed in a wheelchair and moved to a different room to administer a breathing treatment. Henson's vital signs were again assessed finding a blood pressure reading of 232/151 and a heart rate of 53 beats per minute (*See* Exhibit D). An attempt to administer an additional breathing treatment failed due to the fact that Henson's pulmonary tidal volume was insufficient to allow him to inhale the medication. Henson was too weak to hold the hand-held breathing treatment device, and he became incoherent and lethargic. Officer Swalwell attempted unsuccessfully to hold the device near Henson's mouth in order to administer the medication. Henson told the detention officers, "I'm done. I'm not gonna [sic] make it" (*See* Exhibit D-G). Detention officers then began to massage Henson's shoulders and fan him with a tupperware lid (*See* Exhibit C).

On November 29, 2004, at 5:16 a.m, Henson's life functions ceased, he became incontinent, stopped breathing, and was pulseless (Exhibit G). Cardiopulmonary resuscitation ("CPR") efforts were then initiated by the detention officers. At 5:19 a.m., detention officers alerted emergency medical response. Wichita Falls Fire Department first responders arrived at the Annex at 5:25 a.m. and continued CPR efforts. EMS officials arrived at 5:31 a.m. and performed advanced life support. Henson was then transported to United Regional Medical Center. After exhausting all possible medical means, Henson was pronounced dead at 6:17 a.m. An autopsy report from the Tarrant

County Medical Examiner's Office revealed that Henson died from chronic obstructive pulmonary disease. (*See* Exhibit K). Dr. Bolin was not present at any time during the entire incident.

Plaintiffs filed suit against all Defendants under 42 U.S.C. § 1983 alleging Fourteenth amendment constitutional violations, ADA violations, and various state claims. Specifically, Plaintiffs claim Dr. Bolin implemented unconstitutional policies that caused Henson's death because he (1) deliberately failed to treat Henson despite several pink card requests, (2) created barriers to supervision and proper medical treatment, and (3) failed to supervise and instruct the nursing staff.

On September 10, 2007, Dr. Bolin filed a Motion to Dismiss pursuant to FRCP 12(b)(6) on all of Henson's claims.

## II. ANALYSIS

Plaintiffs assert that Dr. Bolin violated Henson's Fourteenth Amendment rights under 42 U.S.C. § 1983. Plaintiffs argue Dr. Bolin knowingly implemented unconstitutional policies and was deliberately indifferent to Henson's need for medical care. Dr. Bolin denies these allegations and further argues he is protected by qualified immunity. The court GRANTS Dr. Bolin's Motion to Dismiss as Plaintiffs have produced insufficient evidence that Dr. Bolin was deliberately indifferent or that he implemented a policy that caused a violation of Henson's constitutional rights.

### A. Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is disfavored in the law and rarely granted. *See Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the

non-movant. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). The complaint will only be dismissed if it appears beyond doubt that the claimant can prove no set of facts in support of its claim that would entitle it to relief. *See Campbell*, 43 F.3d at 975; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994). The relevant question is not whether the claimant will prevail but whether it is entitled to offer evidence to support its claims. *See Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 571 (N.D.Tex. 1997). "While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir.1994). In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)); *see also Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002). A complaint must set forth factual allegations respecting each material element necessary to sustain recovery on some actionable theory. *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.,* 332 F.3d 6, 19 (1st Cir. 2003).

**B.     Qualified Immunity Standard**

The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). The threshold question is whether, on the plaintiff's version of the facts, the officer's conduct violated a currently-existing constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Saucier v. Katz,* 533 U.S. 194, 200 (2001)). If the plaintiff fails to allege a constitutional violation, then the defendant is entitled to qualified immunity and the court need not inquire any further. *Id*. at 201. If, however, the plaintiff has shown a violation of a constitutional right, the court must then determine whether the defendant's actions were "objectively reasonable" in light of "clearly established law" at the time of the alleged violation. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

C.   **Dr. Bolin is entitled to the defense of qualified immunity.**

Dr. Bolin has raised qualified immunity as a defense to Henson's 42 U.S.C. § 1983 claims against him. Dr. Bolin is a private physician who has contracted with Wichita County to provide medical services at the jail. In this capacity, he is acting under color of state law for purposes of § 1983 and is entitled to the defense of qualified immunity. *West v. Atkins*, 487 U.S. 42, 56 (1988). The fact that Dr. Bolin is a contract physician does not alleviate his entitlement to the qualified immunity defense. *Chauncey v. Evans*, No. 2:01-CV-0445, 2003 WL 21730580, at *2 (N.D. Tex. Feb. 11, 2003). In order to overcome this defense, Plaintiffs must prove Dr. Bolin violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

D.   **Plaintiffs have produced insufficient evidence that Dr. Bolin violated Henson's**

7

**constitutional rights.**

Plaintiffs have produced insufficient evidence that Dr. Bolin was deliberately indifferent to Henson's medical needs or that he implemented an unconstitutional policy or custom that causally related to the deprivation of Henson's constitutional rights and his subsequent death. Pretrial detainees have a constitutional right under the Due Process clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference.[2] In order to state a colorable claim for the denial of medical care under Section 1983, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference" occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993).

*Supervisory Liability*

Plaintiffs expressly contend that they do not seek to hold Dr. Bolin liable in his supervisory capacity. However, because he was not present during the incidents surrounding Henson's death,

---

[2] The deliberate indifference standard, generally applicable only to convicted inmates, also applies to pretrial detainees who complain of an episodic act or omission with respect to medical care and protection from harm. *Calton v. Dallas County*, No. 3:05-CV-2022-N, 2007 WL 2453641, at *5 n.2 (N.D. Tex. August 27, 2007).

the Court must analyze Plaintiffs' unconstitutional policy claims under the standard for supervisory liability. It is well settled law that supervisory personnel cannot be held vicariously liable under § 1983 for the acts of their subordinates under the theory of respondeat superior. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, to state a valid claim against a supervisory official like Dr. Bolin, a plaintiff must establish a causal connection between the acts or omissions of the defendant and the resulting constitutional deprivation. *See, e.g.*, *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir.1995) (per curiam); *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir.1981).

An inmate seeking to hold a supervisor liable for deliberate indifference to the inmate's medical needs may show that the supervisor "promulgated or failed to promulgate policies" that manifested deliberate indifference toward the serious medical needs of prisoners or detainees. *Thompson*, 245 F.3d at 459. The policy must be the moving force of the constitutional violation. *Monell*, 436 U.S. at 694. A supervisor may also be held liable under § 1983 for failure to properly supervise and train subordinate officers who cause a deprivation of constitutional rights. *Wever v. Lincoln County*, 388 F.3d 601, 606-07 (8th Cir. 2004). The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. *Id*. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Id.*

*Claims against Dr. Bolin*

In this case, Plaintiffs argue that Dr. Bolin was deliberately indifferent to Henson's serious medical needs because he (1) knowingly denied Henson medical treatment, (2) failed to train and

9

supervise the nursing staff, and (3) created a policy or custom of discouraging nurses from seeking his guidance thus creating barriers to medical treatment. First, Plaintiffs maintain that Dr. Bolin was made aware of Henson's serous medical needs and was deliberately indifferent to those needs and knowingly withheld his services. Nurse George submitted a pink card on Henson's behalf requesting doctor visitation. However, Dr. Bolin did not visit or treat Henson.[3] Therefore, Plaintiffs claim Dr. Bolin deliberately breached his duties to provide medical care. Secondly, Plaintiffs claim that Dr. Bolin was contractually required to supervise the nursing staff. However, he deliberately chose to supervise only in situations in which nurses directly contacted him for physician treatment. Thus, Plaintiffs allege, Dr. Bolin failed to establish any system of instruction, and this lack of policy and failure to supervise was the direct cause of Henson's death.[4] Lastly, Plaintiffs assert that Dr Bolin created barriers to supervision and proper medical treatment by establishing a practice and custom of discouraging nurses from seeking his medical guidance due to his unpleasant demeanor.[5]

The evidence in this case simply does not support deliberate indifference on the part of Dr. Bolin. Plaintiffs have simply alleged that Nurse George submitted a pink card. This is not evidence that Dr. Bolin was aware of the request or Henson's need for medical attention. Further, his failure to treat Henson is certainly not evidence that he disregarded a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837. In fact, Dr. Bolin did not perform any doctor visitations at the jail until

---

[3] Plaintiffs Response, p. 13

[4] *Id*. at 14.

[5] *Id*. at 15.

10

after Henson's death.[6]

Further, Plaintiffs have not submitted sufficient evidence that the policies of nurse discouragement and inadequate training were unconstitutional. Supervisory liability exists when a supervisor implements a policy so deficient, that the policy itself is a repudiation of constitutional rights. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Plaintiffs have not alleged nor provided evidence that Dr. Bolin was otherwise actually informed or consciously believed that his policies would expose prisoners to substantial risk of serious unmet medial needs. *See Thompkins*, 828 F.2d at 305. Existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *Id.*; *see also*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985). This Court finds that Plaintiffs have presented no substantial evidence that the jail's policy was constitutionally defective at the time of the incident. *Compare Ruiz v. Estelle*, 679 F.2d 1115, 1149-50 (5th Cir.) (describing constitutionally defective system for medical care of inmates where untrained inmates performed major medical procedures such as surgery, and the number of physicians was inadequate). Plaintiffs have not presented sufficient evidence of a deliberate and systematic lack of adequate care for detainees required to preserve a Fourteenth Amendment violation. *See Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986). Therefore, Dr. Bolin can not be held liable on the theory that he implemented an unconstitutional policy.

Because Plaintiffs failed to allege a constitutional violation, Dr. Bolin is entitled to qualified immunity and the court need not inquire any further. *Saucier*, 533 U.S. at 201.

---

[6] Plaintiffs Response, p. 13.

## III.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Dr. Bolin's Motion to Dismiss on all of Plaintiffs' constitutional claims.  Daniel Bolin is hereby dismissed from this action.

**SO ORDERED** on this 7th day of August, 2008.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**